# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRUNO SANZI, <br><br> Plaintiff, <br><br> v. <br><br> XPO LOGISTICS, INC., <br><br> Defendant. | No. 20 CV 02985 <br><br> Judge Mary M. Rowland |

## MEMORANDUM OPINION & ORDER

Bruno Sanzi ("Sanzi") is suing XPO Logistics, Inc. ("XPO") for violating Title VII by discriminating against him on the basis of national origin, and retaliating against him for bringing his claim forward. He also accuses XPO of violating the Illinois Wage Payment and Collection Act ("IWPCA") and breaching his employment contract. XPO has filed a motion to dismiss this case pursuant to the doctrine of *forum non conveniens*, or to transfer it to the United States District Court for the Middle District of North Carolina in accordance with 28 U.S.C. § 1404(a). (Dkt. 11). For the reasons stated below, the motion to dismiss is denied, and the motion to transfer is granted.

## LEGAL STANDARD

XPO has requested either a dismissal or a transfer of this case. "A forum-selection clause channeling litigation to a *nonfederal* forum is enforced through the doctrine of *forum non conveniens*." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 892 (7th Cir. 2018) (citation omitted, emphasis added). Section 1404(a) "is a codification

of [the *forum non conveniens*] doctrine for the subset of cases in which the transferee forum is another *federal* court." *Atlantic Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 50 (2013) (emphasis added); 28 U.S.C. § 1404(a) ("a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented"). Here, the forum-selection clause in Sanzi's Employment Agreement requires that litigation take place either at the Superior Court of Guilford County, North Carolina or in the United States District Court for the Middle District of North Carolina. (Dkt. 11, 2). Therefore, dismissal or transfer may be appropriate, and "[e]ither way, the analysis is the same," *Mueller*, 880 F.3d at 894.

XPO favors dismissal, arguing that "it allows Sanzi to file in either of the forums identified in the forum selection clause." (Dkt. 19, 8). Although he prefers the Northern District of Illinois, Sanzi favors transfer over dismissal, arguing that the "case must be brought in federal court, because Mr. Sanzi has claims under Title VII." (Dkt. 16, 4). While XPO is correct that in fact state and federal courts have concurrent jurisdiction over Title VII cases, *Yellow Freight Sys. v. Donnelly*, 494 U.S. 820, 823 (1990), Sanzi clearly plans to re-file this case in federal court if it is dismissed. Therefore, the Court will consider only the motion to transfer.

## BACKGROUND

XPO is a transportation and logistics company, incorporated in Delaware and headquartered in Connecticut. (Dkt. 12, 1).[1] Sanzi was, until recently, an employee

---

[1] All facts referenced in this Order are from the Complaint unless otherwise specified.

2

of XPO living and working in Illinois. His relationship with XPO began in 2015, when he signed an Employment, Confidentiality and Non-Compete Agreement (the "Agreement") with its predecessor, JHCI Holdings, Inc. The Agreement included a forum selection clause, specifying that:

> Employee agrees that any claim against the Company arising out of or relating in any way to this Agreement or Employee's employment with the Company (including, without limitation, any claim arising under any federal civil rights statutes) shall be brought exclusively in the Superior Court of Guilford Court [*sic*], North Carolina, or the United States District Court of the Middle District of North Carolina, and in no other forum. (Dkt. 11, 2)

Beginning in 2018, Sanzi stopped receiving commission payments that he claims he was owed. In November of 2019, he formally complained to XPO about these payments, and about perceived discrimination on the basis of national origin. Sanzi filed a claim with the EEOC in December. Two months later in February of 2020, XPO began investigating Sanzi, alleging violations of company policy. His employment was terminated by XPO on April 24, 2020. This suit was filed in May of 2020 in the Northern District of Illinois, and in June of 2020, XPO sued Sanzi for breach of contract in the Superior Court of Guilford, North Carolina, asserting that Sanzi had "violated his confidentiality agreement with XPO by disclosing information about his claims to his attorney" when he filed this case. (Dkt. 16, 1–2).

## ANALYSIS

The Supreme Court has held that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atlantic Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 63 (2013) (quotation and citation omitted). Accordingly, the Court will first determine whether this forum-selection

3

clause is valid. If the clause is valid, the Court will consider whether this is one of those exceptional cases in which it should nevertheless be set aside.

**I. Validity of Forum Selection Clause**

The Court applies federal law to determine the validity of the forum selection clause. *See Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 159 (7th Cir. 1993) (applying federal common law to determine the validity of the forum selection clause); *see also, Fuller v. Goldstar Estate Buyers Corp.*, No. 10 CV 5839, 2011 WL 809429, at *4 (N.D. Ill. Mar. 1, 2011) ("In federal question cases, courts in both the Seventh and Eighth Circuits have held that the validity and interpretation of a forum selection clause is determined by application of federal rather than state law.").

Under federal law, forum-selection clauses are presumed to be valid unless "the resisting party can show it is unreasonable under the circumstances." *Bonny*, 3 F.3d at 160. Forum-selection clauses are unreasonable under the circumstances "(1) if their incorporation into the contract was the result of fraud, undue influence or overweening bargaining power; (2) if the selected forum is so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court; or (3) if enforcement of the clauses would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision." *Id*. (quotations and citations omitted). Courts construe this exception narrowly. *Id*.; *see also Ayyash v. Horizon Freight Sys.*, No. 15 CV 10296, 2018 WL 5994755, at *3 (N.D. Ill. Nov. 15, 2018).

Sanzi argues that the clause is invalid for two reasons: first, there was unequal bargaining power between himself and his employer at the time the Agreement was signed, and second, it would be gravely difficult and inconvenient for him to litigate in North Carolina.

### A. Unequal Bargaining Power

In *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991), the Supreme Court held that the forum-selection clause of a contract printed on the back of a cruise ship ticket was valid, even though the customers who purchased those tickets had not negotiated that clause, and likely could not have. Since then, forum-selection clauses like the one in Sanzi's Agreement have generally been upheld in spite of disparities in bargaining power between the parties. *See IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 992–93 (7th Cir. 2008) ("it has been hard to find decisions holding terms invalid on the ground that something is wrong with non-negotiable terms in form contracts"); *In re Mathias*, 867 F.3d 727, 731 (7th Cir. 2017) ("the Supreme Court held long ago—well before *Atlantic Marine* limited the scope of the § 1404(a) analysis in this context—that contractual forum selection clauses are presumptively valid even in the absence of arm's-length bargaining"); *Ayyash*, No. 15 CV 10296, 2018 WL 5994755, at *3 ( "a mere lack of bargaining power on the part of one party to a contract does not make a forum-selection clause invalid"). Sanzi assumed the relatively senior role of Vice President of Business Development at XPO when he signed the Agreement in 2015. (Dkt. 1, 1). He was likely in a far better bargaining position than many prospective employees, never mind cruise line

5

customers. Therefore, the Court will not invalidate the forum-selection clause on these grounds.

**B. Inconvenience**

The Court duly notes that Sanzi and various prospective witnesses live in the Chicago area. (Dkt. 16, 1).[2] That said, the District Court for the Middle District of North Carolina is not so inconvenient as to render the forum-selection clause invalid. Sanzi is engaged in another lawsuit with XPO in that state and has been deposed (virtually) in that litigation. (Dkt. 19, 5). The federal court will be able to make similar arrangements. Moreover, forum-selection clauses requiring litigants to travel much farther have been upheld. *See Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993) ("being compelled to litigate in England" didn't invalidate a forum-selection clause); *Prof'l LED Lighting, Ltd. v. Aadyn Tech., LLC*, No. 14 CV 2440, 2014 WL 6613012, at *5 (N.D. Ill. Nov. 21, 2014) (forum-selection clause requiring transfer from Northern District of Illinois to Southern District of Florida wasn't unduly inconvenient); *Dearborn Indus. Mfg. Co. v. Soudronic Finanz AG*, No. 95 C 4414, 1997 WL 156589, at *7 (N.D. Ill. Apr. 1, 1997) (forum-selection clause requiring litigation in Switzerland was valid).

The forum-selection clause in Sanzi's Agreement is valid.

---

[2] XPO cites *Atlantic Marine* for the proposition that "by previously agreeing to litigate any disputes arising out of the Agreement or his employment with the Company in North Carolina, Sanzi 'waive[d] the right to challenge the preselected forum as inconvenient or less convenient for [himself] or [his] witnesses, or for [his] pursuit of the litigation.'" *Atlantic Marine*, 571 U.S. at 64. This is an incorrect reading of that case. The Supreme Court was explaining that inconvenience will not render a *valid* forum-selection clause unenforceable. *Id*. at 63 ("when the parties' contract contains a *valid* forum-selection clause") (emphasis added). "Grave inconvenience" is relevant to determining a clause's validity. *See Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993).

6

## II. Exceptional Circumstances

Because this forum-selection clause is valid, Sanzi bears the burden of "establishing that transfer to the forum for which the parties bargained is unwarranted." *Atlantic Marine*, 571 U.S. at 63. The Seventh Circuit has held that "[i]n the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018) (quotation and citation omitted). The appellate court went on to say that "[w]hen the case involves a forum-selection clause, however, private interests drop out of the equation." *Id*. The public interest factors are "rarely strong enough to override the parties' preselected forum," so "the practical result is that forum-selection clauses should control except in unusual cases." *Id*. (quotation and citation omitted).

Sanzi argues that public interest factors such as "the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty" weigh in his

7

favor, citing *Stroitelstvo Bulg. Ltd. v. Bulgarian-American Enter. Fund*, 589 F.3d 417, 425 (7th Cir. 2009). These arguments are unpersuasive.[3]

First, Sanzi fails to make any specific allegations about docket congestion in the Northern District of Illinois as compared to the Middle District of North Carolina. He may get a speedier trial in Greensboro than he would in Chicago.[4]

Second, the "local interest in having localized disputes decided at home" does not weigh heavily in his favor. Illinois certainly has an interest in this case, since Sanzi was living and working in Illinois during his time at XPO. But North Carolina also an interest in the outcome. XPO operates three offices in North Carolina, including its Supply Chain division. (Dkt. 19, 5). *See Ayyash*, No. 15 CV 10296, 2018 WL 5994755, at *7 (balancing the interests of the state where plaintiff filed against the interests of the state specified in the forum-selection clause). Sanzi's fifth factor, the burden on North Carolina jurors, does not concern the Court for this reason.

The third and fourth factors (trying diversity cases in a forum that is at home with the law and avoidance of unnecessary problems in conflicts of laws or in the application of foreign law) are less relevant in this case than in *Stroitelstvo*. This is a federal question case with appended Illinois state law claims. The federal courts in these two districts are equally adept at applying Title VII, and neither the federal courts in Illinois nor the federal courts in North Carolina specialize in applying

---

[3] Sanzi argues the Northern District of Illinois is proper because he lives in Chicago, his lawyer and most witnesses are here. (Dkt. 16, 1). But these are private interests, and the Court will not consider them at this stage in the analysis.

[4] According to the September 2020 U.S. District Courts National Judicial Caseload Profile, the Northern District of Illinois median time from filing to disposition for civil cases is 10.6 months. In the Middle District of North Carolina, the median time to disposition for civil cases is 9 months.

Illinois *state* law. Moreover, federal courts regularly apply the law of states other than the state in which they sit. *See Atlantic Marine*, 571 U.S. at 67.

On balance, these are not "extraordinary circumstances unrelated to the convenience of the parties" that would "clearly disfavor a transfer." *Atlantic Marine*, 571 U.S. 50–51. Sanzi has failed to carry his burden.

## CONCLUSION

XPO's motion to transfer (Dkt. 11) is granted and this case is transferred to the United States District Court for the Middle District of North Carolina.

E N T E R:

Dated: December 18, 2020

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge